# FOR PUBLICATION

JOSEPH T. MCNALLY
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOLENE TANNER (SBN 285320)
Assistant United States Attorney
Chief, Tax Section
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3544
    Facsimile: (213) 894-0115
    E-mail: jolene.tanner@usdoj.gov
Attorneys for United States of America

**FILED & ENTERED**

**JAN 27 2025**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY evangeli DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: <br><br> MARINE WHOLESALE AND WAREHOUSE CO., <br><br>     Debtor and Debtor-in-Possession. | Case No. 2:22-bk-13785-BB <br><br> Chapter 11 <br><br> **AMENDED** ORDER GRANTING SUMMARY ADJUDICATION IN FAVOR OF THE UNITED STATES OF AMERICA, AND ITS AGENCY THE ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, ON PHASE II OF THE LITIGATION OF THE OBJECTION TO CLAIM NO. 5-1 <br><br> Hearing Date: <br> Hearing Date:    December 5, 2024 <br> Hearing Time:    10:00 a.m. <br> Location:    Ctrm. 1539 <br>                255 E. Temple St. <br>                Los Angeles, CA 90012 |

**I.    Background**

For several years, Marine Wholesale and Warehouse Co. (the "Debtor" or "Marine Wholesale") held an export warehouse proprietor permit issued by Bureau of Alcohol, Tobacco and Firearms ("ATF"), Permit Number EW-CA-5 ("EW Permit"), which allowed it to lawfully receive tobacco products on which the federal excise tax had not been paid, for the purpose of exportation or for consumption beyond the territorial jurisdiction of the United States. *See* 26 U.S.C. §§ 5702(h)-(i); 5712-5713.

1

Under the applicable law, Marine Wholesale was required to apply for a new permit with the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), or its predecessor agency, ATF, if there was a change in the identity of principal stockholders exercising actual or legal control of the company. 26 U.S.C. §§ 5712-5713; 27 C.F.R. § 44.107. If, upon such change, Marine Wholesale failed to file a new application within 30 days, its permit automatically terminated by operation of law. *See* 27 C.F.R. § 44.107.

Prior to the events at issue in this proceeding, Marine Wholesale had previously failed to report changes in ownership. Marine Wholesale then applied for new permits and, in conjunction with those applications, reiterated its obligation to notify the TTB (or its predecessor) of reportable changes in ownership.

On December 29, 1992, the shares of Debtor were held as follows:

| | | |
|---|---|---|
| Robert L. Hartry | -- | 804 shares, 80.4% |
| Robert H. Hartry | -- | 50 shares, 5% |
| Eric M. Hartry | -- | 146 shares, 14.6%. |

On December 15, 2012, at a meeting of Debtor's Board of Directors, the shares of Debtor were transferred and sold, resulting in the following share ownership:

| | | |
|---|---|---|
| Robert L. Hartry, as Trustee of the Robert L. Hartry and Margareta I. Hartry Living Trust for the Benefit of Robert L. Hartry and Margareta I. Hartry and their issue under instrument Dated November 16, 1981 | -- | 454 shares, 45.4% |
| Eric M. Hartry | -- | 146 shares, 14.6% |
| Robert H. Hartry | -- | 250 shares, 25% |
| Jerry Anderson | -- | 150 shares, 15%. |

## II.    Bankruptcy Proceeding

Marine Wholesale filed for chapter 11 relief on July 12, 2022, Case No. 2:22-bk-13785-BB. On August 8, 2022, the TTB filed its proof of claim in this bankruptcy case in the total amount of $25,225,464.63, comprised entirely of a secured claim (Claim No. 5-1).

The Debtor filed an Objection to Claim Number 5 (the "Objection"), asserting that it does not owe any tax liability to the TTB.

In Phase I of the litigation on Debtor's Objection, this Court found, in relevant part, that:

1. The December 15, 2012, transfer of shares described above resulted in a change of legal control under 27 C.F.R. § 44.107.
2. Such change of legal control was required to be reported to the TTB within 30 days.
3. Marine Wholesale failed to report the change to the TTB within 30 days after the change.
4. Marine Wholesale's EW Permit terminated 30 days after the December 15, 2012, change of legal control.

Docket No. 238; *In re Marine Wholesale & Warehouse Co.*, No. 2:22-BK-13785-BB, 2024 WL 1599479 (Bankr. C.D. Cal. Apr. 8, 2024). Despite the unreported change in legal control, however, Debtor's bond remained in effect at all times relevant to this litigation. (Docket No. 219, PTSO ¶ 30.)

In its Scheduling Order dated October 18, 2024 (Docket No. 278), the Court identified the legal issues to resolve during Phase II of the litigation of the Objection. The primary issue in this phase is whether the exemption from tax found in section 5704(b) of the Internal Revenue Code of 1986 (the "IRC") applies, such that a former permit holder—notwithstanding the automatic termination of its EW Permit—can be relieved of the liability otherwise imposed by section 5761(c).

On November 6, 2024, the Debtor and the United States filed cross motions for summary adjudication (Docket Nos. 283, 284). On November 20, 2024, the Debtor and the United States filed their respective oppositions (Docket Nos. 285, 286).

**III.    Discussion**

The IRC imposes an excise tax on tobacco products manufactured in or imported into the United States. 26 U.S.C. § 5701. Original liability for the tax falls on the manufacturer or importer thereof. 26 U.S.C. § 5703(a)(1). In general, a domestic manufacturer of tobacco products pays the appropriate excise taxes after removal of the tobacco products from its factory. 26 U.S.C. § 5703(b). Alternatively, non-taxpaid tobacco products may be transferred between the bonded premises of manufacturers and

export warehouse proprietors, or removed for export, "*in accordance with such regulations and under such bonds as the Secretary shall prescribe.*" See 26 U.S.C. § 5704(b). (emphasis added).[1]

**26 U.S.C. § 5713(a)** reads:
(a) Issuance. A person shall not engage in business as a manufacturer or importer of tobacco products or processed tobacco or as an export warehouse proprietor without a permit to engage in such business. Such permit, conditioned upon compliance with this chapter and regulations issued thereunder, shall be issued in such form and in such manner as the Secretary shall by regulation prescribe, to every person properly qualified under sections 5711 and 5712. A new permit may be required at such other time as the Secretary shall by regulation prescribe.

**27 C.F.R. § 44.61(a)** reads as follows:
Tobacco products and cigarette papers and tubes may be removed from a factory or from an export warehouse, and cigars may be withdrawn from a customs bonded warehouse, without payment of tax for direct exportation or for delivery for subsequent exportation, *in accordance with the provisions of this part.*[2] (Emphasis added.)

**27 C.F.R. § 44.81** reads as follows:
Persons required to qualify. Every person who intends to engage in business as an export warehouse proprietor, as defined in this part, shall qualify as such in accordance with the provisions of this part.

**27 C.F.R. § 44.82** reads as follows:
Every person, before commencing business as an export warehouse proprietor, must apply on TTB Form 5200.3 and obtain the permit provided for in § 44.93. All documents required under this part to be furnished with such application shall be made a part thereof.

**27 C.F.R. § 44.93** reads as follows:
Issuance of Permit. After the application for permit, bond, and supporting documents, as required under this part, has been approved, the appropriate TTB officer will issue a permit to the export warehouse proprietor. The proprietor must keep such permit at the export warehouse and make it available for inspection by an

---

[1] An "export warehouse proprietor" is any person who operates an export warehouse. 26 U.S.C. § 5702(i); 27 C.F.R. § 44.11. An "export warehouse" is:

a bonded internal revenue warehouse for the storage of tobacco products or cigarette papers or tubes or any processed tobacco, upon which the internal revenue tax has not been paid, for subsequent shipment to a foreign country . . . or for consumption beyond the jurisdiction of the internal revenue laws of the United States.

26 U.S.C. § 5702(h); 27 C.F.R. § 44.11.

[2] "This part" refers to Part 44 of Title 27, Code of Federal Regulations. TTB's Part 44 regulations require proper qualification (i.e. obtaining a bond and a permit) when a person intends to engage in business as an export warehouse proprietor. 27 C.F.R. § 44.81.

4

appropriate TTB officer.

**27 C.F.R. § 44.11** reads, in pertinent part, as follows:
Export warehouse. A bonded internal revenue warehouse for the storage of tobacco products or cigarette papers or tubes or any processed tobacco, upon which the internal revenue tax has not been paid, for subsequent shipment to a foreign country, Puerto Rico, the Virgin Islands, or a possession of the United States, or for consumption beyond the jurisdiction of the internal revenue laws of the United States.

Export warehouse proprietor: Any person who operates an export warehouse.

**27 C.F.R. § 44.107** reads as follows:
Change in Stockholders of a Corporation. Where the issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the present permit shall be automatically terminated at the expiration of such 30-day period, *and the proprietor shall dispose of all cigars, cigarettes, and cigarette papers and tubes on hand, in accordance with this part, make a closing inventory and closing report, in accordance with the provisions of §§ 44.146 and 44.151, respectively, and surrender his permit with such inventory and report.* If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application. (Emphasis added.)

Except as provided in IRC § 5704(b) and (d), any person who, within the jurisdiction of the United States, sells or receives tobacco products which have been labeled or shipped for export ("export-only tobacco products") shall, in addition to the tax and any other applicable penalty, be liable for a "penalty equal to the greater of $1,000 or 5 times the amount of the tax" on such products. 26 U.S.C. § 5761(c).

**At issue in this Phase II litigation is whether the Debtor remained eligible for the tax exemption created by section 5704(b) after the automatic termination of its permit. The Court finds that it did not.**

This Court has already found that the Debtor's export warehouse permit automatically terminated by operation of law 30 days after the change of control that occurred on December 15, 2012, due to its failure to report such change of control. Notwithstanding that conclusion, the Debtor argues that it remained eligible for the tax exemption created by 26 U.S.C. § 5704(b) so long as it operated its business during the relevant time period in accordance with the regulations that govern its day-to-day

5

operations (such as labelling requirements), and that the regulations referenced in section 5704(b) do not include the requirement that it maintain a valid permit. The Court rejects this analysis.

While the definitions of "export warehouse" and "export warehouse proprietor" that appear in 27 C.F.R. § 44.11 do not specifically reference the need for a permit, the applicable statute and regulations, when read in their entirety, make clear that no one is permitted to operate as an export warehouse proprietor without a valid permit in effect. IRC § 5713(a) says as much: "A person shall not engage in business as a manufacturer or importer of tobacco products or processed tobacco **or as an export warehouse proprietor without a permit to engage in such business."** 26 U.S.C. § 5713(a) (emphasis added).

Before starting business as an export warehouse proprietor, persons need to apply for and obtain a permit. 26 U.S.C. §§ 5712-5713; 27 C.F.R. § 44.82. Following an automatic termination of a permit due to a failure to report a change of control, unless the proprietor promptly applies for a new permit (which did not happen here), it is required to windup its export warehouse business and stop operating as such. *See* 27 C.F.R. § 44.107 (requiring proprietor to dispose of all tobacco products on hand, make a closing inventory and closing report, and surrender his permit with such inventory and report).[3] The applicable statutes and regulations do not permit the continued operation of an export warehouse after termination of the required permits.

Although the opinions cited by the United States were cases in which courts ultimately dismissed the relevant actions for lack of jurisdiction (as they were attempts to enjoin the collection of

---

[3] 27 C.F.R. § 44.107 states:

> Change in Stockholders of a Corporation. Where the issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the present permit shall be automatically terminated at the expiration of such 30-day period, *and the proprietor shall dispose of all cigars, cigarettes, and cigarette papers and tubes on hand, in accordance with this part, make a closing inventory and closing report, in accordance with the provisions of §§ 44.146 and 44.151, respectively, and surrender his permit with such inventory and report.* If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application. (Emphasis added.)

6

taxes in violation of the Anti-Injunction Act), all of these cases assume or expressly state that, once the proprietor's permit terminates automatically due to a failure to report a change of control, the proprietor becomes liable for any taxes and penalties not paid by the manufacturer: "Export warehouse permits . . . afford tobacco exporters an exemption from federal excise taxes." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 126 (D.C. Cir. 2017) (per curiam); "Without valid permits, export warehouse proprietors are liable for the unpaid excise taxes and penalties that would otherwise apply" to such products. *Marine Wholesale & Warehouse Co. v. United States*, 315 F. Supp. 3d 498, 502 (D. D.C. 2018) (citing 26 U.S.C. §§ 5703(a)(2), 5704(b), (d), 5761(c)); *Gulf Coast Mar. Supply*, 867 F.3d at 125 (export warehouse permits "immunize" their holders "from penalties—and in the case of tobacco, taxes as well—on the unauthorized sale of tobacco"); *Gulf Coast Mar. Supply, Inc. v. United States*, 218 F. Supp. 3d 92, 94-95 (D. D.C. 2016) ("Export warehouse proprietors must operate with a permit issued by TTB. . . . Without such a permit, they may become liable for the excise tax and penalties if they receive tobacco products that did not have the excise tax paid by the manufacturer. 26 U.S.C. §§ 5703(a)(2), 5704(b), 5761(c)."). While not binding on the Court, the Court finds these cases persuasive.[4]

      The Court finds that, at a minimum, 27 C.F.R. § 44.107 is one of the regulations that govern how an export warehouse proprietor must operate in order to qualify for the tax exemption available under 26 U.S.C. § 5704(b). That regulation requires the proprietor to dispose of its tobacco products, make a closing inventory and a closing report after an automatic termination occurs (unless the proprietor timely applies for a new permit). That is, the proprietor is supposed to close up its tobacco sales operation and stop operating as an export warehouse proprietor of tobacco products. There is no dispute that the Debtor did not do that and, instead, continued to operate its tobacco business (until it received a Notice to Cease and Desist dated March 31, 2017). Therefore, even if the Debtor still fell within the definition of an export warehouse proprietor after the termination of its permit, it did not comply with the regulations that govern the operation of its business, and the tax exemption created by section 5704(b) ceased to be available to the Debtor after the automatic termination of its permit.

---

[4] The Court is not aware of, and the Debtor did not cite, any cases with conflicting statements or conclusions.

**The holding of the Court in Phase II is that the Debtor may not rely upon 26 U.S.C. § 5704(b) as a defense to liability under 26 U.S.C. § 5761(c). Therefore, the Debtor is liable under section 5761(c), subject to any other defenses that may be available to it, in an amount to be determined in a later phase of this litigation. (The Court makes no determination at this time as to the amount of the Debtor's liability, if any, for taxes or penalties.) The United States retains all arguments as to any defenses or purported defenses that may be asserted by the Debtor in connection with that later determination.**

Therefore, IT IS HEREBY ORDERED and ADJUDGED that, except to the extent that the Court has modified the proposed form of order lodged by the TTB in response to the arguments advanced by the Debtor in the parties' December 30, 2024 stipulation [Docket No. 300], any objections interposed by the Debtor to the form of this Order are OVERRULED.

IT IS FURTHER ORDERED AND ADJUDGED that summary adjudication is GRANTED in favor of the United States on Phase II of the litigation of the Objection.

IT IS FURTHER ORDERED that the parties shall file a joint pretrial statement, or separate statements, by January 10, 2025.

IT IS FURTHER ORDERED that the Court shall hold a status conference on January 22, 2025, at 10:00 a.m. to determine the next phase of the litigation.

IT IS FURTHER ORDERED that discovery is stayed between December 5, 2024, and March 26, 2025.

**THIS ORDER CONTAINS CORRECTIONS AS NOTED ON THE RECORD ON JANUARY 22, 2025, AND AMENDS AND SUPERSEDES THE COURT'S ORDER ENTERED ON JANUARY 2, 2025 (DOCKET NO. 302).**

Date: January 27, 2025

Sheri Bluebond
United States Bankruptcy Judge