**FILED & ENTERED**

MAY 27 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Marine Wholesale & Warehouse Co.<br><br><br><br><br>Debtor(s). | Case No.: 2:22-bk-13785-BB<br>CHAPTER 11<br>**ORDER RESOLVING PHASE III ISSUES IN CONNECTION WITH LITIGATION OF OBJECTION TO CLAIM NO 5-1**<br><br>Date:         May 14, 2025<br>Time:        1:00 PM<br>Courtroom: 1539 |

The Court conducted a hearing on May 14, 2025, at 1:00 p.m., in Courtroom 1539 of the United States Bankruptcy Court for the Central District of California on the issues identified as the Phase III issues in this Court's March 26, 2025 "Scheduling Order for Phase III of Litigation of Objection to Claim No. 5-1" [Docket No. 344] (the "Scheduling Order"). Appearances were as noted on the record at the time of hearing. The Court, having reviewed the briefs submitted by the parties and having considered

-1-

the legal authorities presented and the oral argument of counsel, hereby sets forth its rulings on the Phase III issues:

## I.

## BACKGROUND

On March 26, 2025, the Court issued the Scheduling Order, which identified the following as the Phase III issues to be resolved at the May 14, 2025 hearing:

1. Whether 26 U.S.C. § 5761(c) can itself be the basis for the imposition of tax liability (as distinguished from liability for the payment of a penalty) or whether this section only creates liability for the payment of penalties;

2. Whether a TTB Form 5220.4 qualifies as a "return" within the meaning of 26 U.S.C. § 6501; and

3. Whether a tax assessment be sustained on any applicable basis even if that basis is not set forth in the assessment, or whether an assessment must specify the correct code section(s) that is/are the basis for the tax liability in order for an assessment to be valid.

## II.

## RULINGS

A. <u>Interpretation of 26 U.S.C. § 5761(c)</u>

The Court concludes that 26 U.S.C. § 5761(c) does not itself provide an independent basis for the imposition of tax liability but rather relates to the imposition of penalties. The statutory language and the surrounding framework indicate that section 5761(c) is focused on penalties for the unauthorized sale or receipt of export-only tobacco products, rather than the assessment of the underlying tax itself.

Section 5761(c) provides that any person who sells, relands, or receives within the jurisdiction of the United States any tobacco products or cigarette papers or tubes which have been labeled or shipped for exportation under this chapter, every person who sells or receives these items and every person who aids or abets in selling, relating or receiving these items shall "*in addition to the tax and any other penalty provided for in this title*, be liable for a penalty equal to the greater of $1,000 or 5 times the amount of the tax imposed by this chapter." [Emphasis added.] The remaining subparts of section 5761 all discuss penalties, rather than the underlying taxes, and the plain language of this section suggests that such persons' liability for the taxes themselves derives from other portions of the chapter. Therefore, the Court finds that any liability that the Debtor may have for excise taxes on tobacco products must arise from a code section other than section 5761(c).

B. Qualification of TTB Form 5220.4 as a "Return"

The Court in Beard v. Commissioner of Internal Revenue Service, 82 T.C. 766 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986), identified four factors that determine whether a particular document submitted to the Internal Revenue Service constitutes a "return" sufficient to trigger the running of the statute of limitations:

(1) the document must contain sufficient data to allow the taxing authority to calculate the taxpayer's tax liability;

(2) the document must purport to be a return;

(3) the document must represent an honest and reasonable attempt to satisfy the requirements of the tax law; and

(4) the document must be executed under penalties of perjury.

All four factors must be satisfied for the relevant document to constitute a "return" under this standard.

Here, the reports submitted by the Debtor were signed under penalty of perjury, and the Court is not in a position to adjudicate summarily whether the Debtor's submission of the reports constituted an honest and reasonable attempt to satisfy the requirements of the tax law.  However, even if the Court were to assume that both the third and fourth factors have been satisfied, the reports would not qualify as "returns" within the meaning of Beard because they do not satisfy the first two requirements set forth in Beard.  The Report does not purport to be a tax return, and it does not contain all the information necessary for the Alcohol and Tobacco Tax and Trade Bureau (the "TTB") to calculate the Debtor's tax liability.

Most significantly, the reports do not purport to be tax returns, and the Debtor did not intend them as such.  The Debtor continues to insist that it was not then and is not now liable for any taxes on the tobacco products in question.  The Debtor did not submit these reports for the purpose or with the intent of submitting a tax return.  The form is primarily used for inventory tracking and does not provide the comprehensive financial information required for tax assessment purposes. The form does not require the Debtor to identify outstanding tax liability and does not reflect any calculation of taxes.  It does not put the TTB on notice that taxes were going to be or should have been assessed.

Moreover, it does not contain all of the information necessary to enable the TTB to calculate the Debtor's tax liability.  It omits a key fact necessary to ascertain the Debtor's tax liability – the fact that gave rise to its tax liability—the loss of its permit due to the change of control.  That is, the Report omits the critical fact that the Debtor had lost its export warehouse permit due to a change of control, which was the basis for the Debtor's tax liability. The Court agrees that this fact pattern is analogous to that relied upon by the Tax Court in Ya Glob. Invs. L.P. v. Comm'r of Internal Rev., 161 T.C. 173 (2023) when it reached the conclusion that the form filed by the partnership did not constitute a return and therefore did not trigger the running of the applicable statute of limitations.

Therefore, the Court finds that the Report does not constitute a valid return for purpose of triggering the statute of limitations under Section 6501. This ruling is consistent with the Ninth Circuit's interpretation of what constitutes a "return" for tax purposes, as articulated in United States v. Hatton (In re Hatton), 220 F.3d 1057, 1061 (9th Cir. 2000) ("The Beard definition was derived from two Supreme Court cases, Germantown Trust Co. v. Commissioner, 309 U.S. 304, 84 L. Ed. 770, 60 S. Ct. 566 (1940) and Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 79 L. Ed. 264, 55 S. Ct. 127 (1934), and provides a sound approach under both the Bankruptcy Code and the I.R.C.").

C. Validity of Tax Assessment

The Court concludes that a tax assessment may be sustained on any applicable basis, whether or not the specific basis is set forth in the assessment, so long as the assessment otherwise complies with the relevant rules and regulations. The applicable rules and regulations do not require the TTB to specify a particular code section in the assessment, nor do they render an assessment invalid if it cites an incorrect code section. As long as the assessment identifies the taxpayer, the type of tax or penalty assessed, the taxable period, and the amount of the assessment, it is valid.

The cases the Debtor cites stand for the proposition that the assessment of a tax is not the same as the assessment of a tax penalty and that a tax penalty must be assessed before it may be enforced. The Court agrees that taxes and penalties are two different things and that a tax or penalty must be assessed before it may be enforced, but these principles have no bearing on the outcome of the instant dispute. Here, the TTB assessed taxes, interest on those taxes and penalties for the Debtor's failure to pay those taxes. It did not assess (or has not yet assessed) either of the penalties referenced in section 5761(c). The TTB has reserved the argument that it may even now go back and assess these penalties – which argument is not presently before the Court – but the TTB is not arguing that it has already assessed a penalty for either

$1,000 or 5 times the amount of the tax due  The TTB's contention is that it properly assessed the tax itself (and the penalty for failure to pay that tax) and that its assessment was made by an appropriate TTB officer and identified the taxpayer, the type of tax or penalty assessed, the taxable period, and the amount of the assessment  None of the applicable rules and regulations requires the TTB to specify a particular code section or stands for the proposition that, if the assessment specifies an incorrect code section, it is invalid.  Therefore, if the TTB can demonstrate that the Debtor should be held liable for the taxes that it assessed under any code section, the assessment can be upheld, even if the TTB specified the wrong code section or sections in its assessments.

### III.

### CONCLUSION

Based on the foregoing, the Court hereby rules as follows:

1.    26 U.S.C. § 5761(c) does not itself provide an independent basis for the imposition of tax liability, but rather relates to the imposition of penalties;

2.    TTB Form 5220.4 does not qualify as a "return" within the meaning of 26 U.S.C. § 6501 and therefore will not trigger the running of the applicable statute of limitations; and

    3.    A tax assessment may be sustained on any applicable basis, whether or not the specific basis is set forth in the assessment, so long as the assessment otherwise complies with the relevant rules and regulations.

**IT IS SO ORDERED.**

###

Date: May 27, 2025

Sheri Bluebond
United States Bankruptcy Judge