# FOR PUBLICATION

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOLENE TANNER (SBN 285320)
Assistant United States Attorney
Chief, Tax and Bankruptcy Section
    Assistant United States Attorneys
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3544
    Facsimile: (213) 894-0115
    E-mail: jolene.tanner@usdoj.gov

Attorneys for United States of America

**FILED & ENTERED**

**JUL 28 2025**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli DEPUTY CLERK

**CHANGES MADE BY COURT**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MARINE WHOLESALE AND WAREHOUSE CO.,<br><br>    Debtor and Debtor-in-Possession. | Case No. 2:22-bk-13785-BB<br><br>Chapter 11<br><br>ORDER GRANTING SUMMARY ADJUDICATION IN FAVOR OF THE UNITED STATES OF AMERICA, AND ITS AGENCY THE ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, ON PHASE IV OF THE LITIGATION OF THE OBJECTION TO CLAIM NO. 5-1<br><br>Hearing Date:<br>Hearing Date:    June 25, 2025<br>Hearing Time:    11:00 a.m.<br>Location:    Ctrm. 1539<br>    255 E. Temple St.<br>    Los Angeles, CA 90012 |

I.    **Background**

    For several years, Marine Wholesale and Warehouse Co. (the "Debtor" or "Marine Wholesale")

held an export warehouse proprietor permit issued by Bureau of Alcohol, Tobacco and Firearms ("ATF"),

1

Permit Number EW-CA-5 ("EW Permit"), which allowed it to lawfully receive tobacco products on which the federal excise tax had not been paid, for the purpose of exportation or for consumption beyond the territorial jurisdiction of the United States. *See* 26 U.S.C. §§ 5702(h)-(i); 5712-5713.

Under the applicable law, Marine Wholesale was required to apply for a new permit with the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), or its predecessor agency, ATF, if there was a change in the identity of principal stockholders exercising actual or legal control of the company. 26 U.S.C. §§ 5712-5713; 27 C.F.R. § 44.107. If, upon such change, Marine Wholesale failed to file a new application within 30 days, its permit automatically terminated by operation of law. *See* 27 C.F.R. § 44.107.

Prior to the events at issue in this proceeding, Marine Wholesale had previously failed to report changes in ownership. Marine Wholesale then applied for new permits and, in conjunction with those applications, reiterated its obligation to notify the TTB (or its predecessor) of reportable changes in ownership.

On December 29, 1992, the shares of Debtor were held as follows:

| | | |
|---|---|---|
| Robert L. Hartry | -- | 804 shares, 80.4% |
| Robert H. Hartry | -- | 50 shares, 5% |
| Eric M. Hartry | -- | 146 shares, 14.6%. |

On December 15, 2012, at a meeting of Debtor's Board of Directors, the shares of Debtor were transferred and sold, resulting in the following share of ownership:

| | | |
|---|---|---|
| Robert L. Hartry, as Trustee of the Robert L. Hartry and Margareta I. Hartry Living Trust for the Benefit of Robert L. Hartry and Margareta I. Hartry and their issue under instrument Dated November 16, 1981 | -- | 454 shares, 45.4% |
| Eric M. Hartry | -- | 146 shares, 14.6% |
| Robert H. Hartry | -- | 250 shares, 25% |
| Jerry Anderson | -- | 150 shares, 15%. |

## II.    Bankruptcy Proceeding

Marine Wholesale filed for chapter 11 relief on July 12, 2022, Case No. 2:22-bk-13785-BB. On August 8, 2022, the TTB filed its proof of claim in this bankruptcy case in the total amount of $25,225,464.63, comprised entirely of a secured claim (Claim No. 5-1).

The Debtor filed an Objection to Claim Number 5 (the "Objection"), asserting that it does not owe any tax liability to the TTB.

In Phase I of the litigation on Debtor's Objection, this Court found, in relevant part, that:

1. The December 15, 2012, transfer of shares described above resulted in a change of legal control under 27 C.F.R. § 44.107.

2. Such change of legal control was required to be reported to the TTB within 30 days.

3. Marine Wholesale failed to report the change to the TTB within 30 days after the change.

4. Marine Wholesale's EW Permit terminated 30 days after the December 15, 2012, change of legal control.

Docket No. 238; *In re Marine Wholesale & Warehouse Co.*, No. 2:22-BK-13785-BB, 2024 WL 1599479 (Bankr. C.D. Cal. Apr. 8, 2024). Despite the unreported change in legal control, however, Debtor's bond remained in effect at all times relevant to this litigation. (Docket No. 219, PTSO ¶ 30.)

In Phase II of the litigation on Debtor's Objection, this Court found, in relevant part, that the Debtor may not rely upon 26 U.S.C. § 5704(b) as a defense to liability under 26 U.S.C. § 5761(c) because Debtor did not comply with the regulations that govern the operation of its business. At a minimum, Debtor did not comply with 27 C.F.R. § 44.107, which required Debtor to stop operating as an export warehouse proprietor. Therefore, the Debtor is liable under section 5761(c), subject to any other defenses that may be available to it, in an amount to be determined in a later phase of this litigation. *In re Marine Wholesale & Warehouse Co.*, 667 B.R. 570 (Bankr. C.D. Cal. 2025).

In Phase III of the litigation on Debtor's Objection, this Court found, in relevant part, that:

1. 26 U.S.C. § 5761(c) does not itself provide an independent basis for the imposition of tax liability, but rather relates to the imposition of penalties;

2. TTB Form 5220.4 does not qualify as a "return" within the meaning of 26 U.S.C. § 6501 and therefore will not trigger the running of the applicable statute of limitations; and

3. A tax assessment may be sustained on any applicable basis, whether or not the specific basis is set forth in the assessment, so long as the assessment otherwise complies with the relevant rules and regulations. The applicable rules and regulations do not require TTB to

specify a particular code section in the assessment, nor do they render the assessment

invalid if it cites an incorrect code section.

*In re Marine Wholesale & Warehouse Co.*, No. 2:22-BK-13785-BB, 2025 WL 1504793, at *3 (Bankr. C.D. Cal. May 27, 2025).

In its Scheduling Order dated May 15, 2025 (Docket No. 357), the Court identified the legal issue to resolve during Phase IV of the litigation of the Objection—If the Debtor can demonstrate that it exported all of the tobacco products on which the TTB seeks to impose taxes and/or penalties, would that render the Debtor exempt from these taxes and penalties, and, if so, what would be the basis for that exemption?

On May 28, 2025, the United States and the Debtor filed cross motions for summary adjudication (Docket Nos. 366, 367). On June 11, 2025, the Debtor and the United States filed their respective oppositions (Docket Nos. 372, 373).

## III.    Discussion

### A.    Section 5703

The Court has already rejected the Debtor's argument that it never received transferee liability under 26 U.S.C. § 5703(a)(2) because it had lost its permit. As the Court previously explained, the loss of the permit made the Debtor ineligible for the exemption from tax liability under section 5704(b) because it was not in compliance with applicable regulations due to the loss of its permit. However, the loss of the Debtor's permit did not mean that it never obtained transferee liability in the first instance. Instead, the problem was the Debtor's failure to operate in compliance with applicable regulations. That language appears only in section 5704(b) and is not a condition precedent to the Debtor's acquisition of tax liability in the first instance.

### B.    Export Clause

Excise taxes on tobacco products are imposed upon manufacture and not on exportation. Taxes imposed on manufacture (e.g., under 26 U.S.C. § 5701) are not prohibited by the Export Clause, even if the goods are eventually exported. *See Liggett & Myers Tobacco Co. v. United States*, 299 U.S. 383, 386 (1937) (Finding that the tax is imposed upon the manufacture of the tobacco and deferred payment of the tax does not change the nature of the tax). The fact that the timing of the payment may be

deferred until removal or sale does not change the nature of the tax or make it unconstitutional. Cases decided after *Liggett* agree that the excise tax on tobacco products (or, similarly, alcohol products) is imposed upon the manufacture of the goods, even if the time of payment is deferred. *See R.J. Reynolds Tobacco Co. v. Robertson*, 94 F.2d 167, 169 (4th Cir. 1938) ("The tax was none the less a tax upon manufacture" even though it "was not payable by the manufacturer or collectable by the United States until the sale or removal of the goods."); *see also Cornell v. Coyne*, 192 U.S. 418, 429 (1904) ("[I]t is clear that there is no constitutional objection to the imposition of the same manufacturing tax on filled cheese manufactured for export and, in fact, exported, as upon other filled cheese."). It is unconstitutional under the Export Clause to tax goods *because* they are being exported -- that is, to tax the exportation itself. It is not unconstitutional to tax the manufacture of goods that may later be exported.

C.      27 C.F.R. § 44.66

Section 44.66 provides as follows:

A manufacturer of tobacco products or cigarette papers and tubes or an export warehouse proprietor is relieved of the liability for tax on tobacco products, or cigarette papers or tubes upon providing evidence satisfactory to the appropriate TTB officer of exportation or proper delivery. The evidence must comply with this part. Such evidence shall be furnished within 90 days of the date of removal of the tobacco products, or cigarette papers or tubes: *Provided*, That this period may be extended for good cause shown.

27 C.F.R. § 44.66

The Court agrees with the TTB that the Debtor's argument takes this regulation entirely out of context and that an interpretation of this implementing regulation in the manner that the Debtor recommends would entirely undermine, rather than implement, the statutory scheme to which it relates. The Court finds the following portion of the TTB's brief persuasive on this point:

As with other federal regulations, section 44.66 "must not be isolated and read alone. It is an integral part of a complex group of regulations which must be read and construed in pari materia." *See United States v. Neckels*, 451 F.2d 709, 711 (9th Cir.

1971), *overruled on other grounds, United States v. D'Arcey*, 471 F.2d 880 (9th Cir.

1972); *Marlowe v. Bottarelli*, 938 F.2d 807, 813 (7th Cir. 1991) ("[W]henever possible

courts construe statutes and regulations in pari materia."); *Navajo Health Found. v.

Burwell*, 220 F. Supp. 3d 1190, 1261 (D. N.M. 2016) (The canon of in pari materia

"states that regulations on the same matter or subject are to be construed together if

possible."). Thus, section 44.66 should be read in pari materia with IRC chapter 52

(including, at a minimum, sections 5703 and 5704) and the remainder of part 44.

 Properly construed in this context, it is evident that section 44.66 in no way

confers complete and unconditional relief from liability upon export warehouses or

manufacturers. . . . For instance, section 44.61 specifies that tobacco products may be

removed without payment of tax for exportation *only* "in accordance with the provisions

of [part 44]." 27 C.F.R. § 44.61(a). It further states that tobacco products are eligible for

removal or transfer in bond under part 44 "only if they bear the marks, labels, and

notices required by this part." 27 C.F.R. § 44.61(b) . Section 44.62 specifies that all

removals of tobacco products from an export warehouse without payment of tax, for

delivery to vessels and consumption outside the United States, are "subject to the

applicable provisions of this part." 27 C.F.R. § 44.62. TTB's part 40 regulations provide

even further context through which one may discern the limited scope of section 44.66.

"The removal of tobacco products . . . for shipment to a foreign country . . . or for

consumption beyond the jurisdiction of the internal revenue laws of the United States,

shall be in accordance with the provisions of [27 C.F.R. part 44]." 27 C.F.R. § 40.235.

 Marine Wholesale's argument that proof of exportation is a "complete defense"

to taxation is not only unsupported and erroneous, it is legally indefensible because

section 44.66 cannot itself confer a tax exemption that does not otherwise exist in law....

Here, the applicable statute is 26 U.S.C. § 5704(b), and Marine Wholesale is not eligible

for the exemption it confers. *Marine Wholesale*, 667 B.R. at 575-76. Further, Marine

Wholesale's "complete defense" argument would negate the statutory requirements for

export marks imposed by section 5704(b); for export warehouse and manufacturing

permits imposed by section 5713; and for bonds imposed by section 5711. It would render an intent to defraud irrelevant and prevent imposition of a "tax equal to the tax" pursuant to section 5751(b). . . . Illicitly manufactured (but subsequently exported) tobacco products, the tax upon which is statutorily "due and payable immediately upon manufacture" pursuant to section 5703(b)(2)(F), would instead be exempt from taxation under section 44.66.

Given these potential consequences, the Court should reject Marine Wholesale's alleged defense under section 44.66. *See Bong v. Alfred S. Campbell Art Co.*, 214 U.S. 236, 248 (1909) (Where the Secretary of the Treasury "is authorized to make regulations in aid of the law, he cannot make regulations which defeat the law."); *Campbell v. United States*, 107 U.S. 407, 410 (1882) (Regulations cannot "repeal or annul the law" and if they "worked such a result, no court would hesitate to hold them invalid as being altogether unreasonable."); *United States v. Two Hundred Barrels of Whiskey*, 95 U.S. 571, 576 (1877) (Treasury regulations "cannot have the effect of amending the law. They may aid in carrying the law as it exists into execution, but they cannot change its positive provisions."). Moreover, to the extent that there may be any doubt as to the proper construction of these provisions in their entirety, "then that construction must be adopted which is most advantageous to the interests of the government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor." *Cornell*, 192 U.S. at 431.

United States' Response Brief, Docket No. 373, pp. 13-14.

In short, the Debtor's argument under section 44.66 proves too much. Were the Court to accept the Debtor's interpretation of section 44.66, it would create an exception that would swallow the entire taxation scheme created by the remaining code sections applicable to the parties' interactions and completely undermine the entire permitting scheme. If all one has to do to avoid payment of taxes is export the product and show proof of exportation in a timely manner, why would anyone ever apply for a permit in the first place? Why would anyone bother to package the product appropriately for export? Why would anyone post the required bonds? And so on.

The Debtor has not supplied the Court with examples of any other courts that have read section 44.66 in such an expansive manner, and this Court does not intend to be the first. Therefor,

**IT IS HEREBY ORDERED AND ADJUDGED that** summary adjudication is GRANTED in favor of the United States on Phase IV of the litigation of the Objection.

As set forth on the record, the Court further finds that it has already ruled on all defenses asserted by the Debtor in Docket No. 334—the pleading in which the Debtor was ordered to list all of its defenses in this proceeding—or the defenses are moot or not ripe, **with the exception of the defense set forth at line 2 on page 11 of Docket No. 334 (the "Estoppel Defense"):  whether the TTB consented to the operation of the Debtor's business without a permit and should therefore be estopped to collect taxes from the Debtor on tobacco products that would otherwise have been exempt from taxation if the Debtor had not lost its permit.**  Therefore, the Court does not need to rule on any additional defenses **other than the Estoppel Defense.**

IT IS SO ORDERED.

###

Date: July 28, 2025

Sheri Bluebond
United States Bankruptcy Judge